## Gaines's Estate.

*Executors and administrators—Husband and wife—Renunciation by husband—Nominee of husband—Nonresident.*

Where a creditor of a married woman has been appointed her administrator, such appointment will not be vacated, and the husband of the decedent or his appointee be granted letters, where it appears that the husband had renounced and had not subsequently withdrawn his renunciation, that the husband had lived most of the time away from his wife, and bigamously married another woman, and that his nominee was a nonresident who had been selected by representatives of a railroad company against which a suit was pending for injuries sustained by the decedent.

Argued Nov. 18, 1913. Appeal, No. 308, Oct. T., 1912, by Charles H. Gaines, from decree of O. C. Delaware Co., Orphans' Ct., Docket U., page 315, dismissing appeal from Register of Wills in Estate of Ellen Gaines, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Appeal from register of wills.
The opinion of the Superior Court states the case.

*Error assigned* was decree dismissing appeal.

*Kingsley Montgomery,* for appellant, cited: Coover's App., 52 Pa. 427.

*John E. McDonough,* for appellee, cited: Odiorne's App., 54 Pa. 175; Sharpless's Est., 209 Pa. 69.

OPINION BY RICE, P. J., February 20, 1914:

This is an appeal by Charles H. Gaines from a decree of the orphans' court dismissing his appeal from the

action of the register of wills in refusing to revoke the letters of administration upon the estate of his deceased wife, which had been granted to John E. McDonough, a creditor, and to grant letters to D. Reese Esrey. In his application to the register, Gaines renounced "all my right to letters of administration," and we cannot ascertain from the record that this renunciation was ever formally withdrawn. Nor did he unequivocally indicate a desire to withdraw it on the hearing in the orphans' court. True, there is one expression which might indicate such desire; but his confused and contradictory testimony, taken as a whole, fairly warrants the conclusion that he did not desire to have letters granted to himself because, as he said, "of course, I couldn't get security." Indeed, it is not clear even that he really desired the revocation of the letters already granted, for, when asked by the court, "Do you want them issued to Esrey according to the paper, or do you want them issued to Mr. McDonough?" he answered: "I don't know, sir, indeed, I don't know. I am kind of at sea." Moreover, the court found that his appearance and conduct, when examined in court, showed his personal unfitness to act himself, also that he had been living away from his wife most of the time, and had married another woman bigamously some time before his wife's death. Our perusal of the testimony leads us to the same conclusion as to the personal fitness of the appellant, and the fact of his bigamous marriage is based on his own confession. Granting that these facts, whether taken separately or together, would not be ground for holding that he had forfeited his right to administer, they do furnish ground, if ground be needed, for not decreeing that letters to be granted to him, notwithstanding his manifest disinclination and his express renunciation.

But it is argued that, though he renounced his personal right, yet it was the imperative duty of the court to vacate the letters and to direct the register to issue

new letters to the husband's nominee. Section 22 of the Act of March 15, 1832, P. L. 135, provides: "That if such decedent were a married woman, her husband shall be entitled to the administration in preference to all other persons." In Coover's App., 52 Pa. 427, where this statute was under consideration and was the basis of the decision, it was held, that where the husband is entitled to all his wife's personal estate upon her death he may take out the letters himself, "or nominate to the register a fit person to be appointed." The full meaning of this reference to the fitness of the appointee is brought out very clearly in the concluding part of the opinion, where the court stated that there was not · a single circumstance in the case preventing the husband from demanding and receiving the letters for himself, "and of course for his appointee, if there was no personal objection to the nominee." When it is remembered that the only real necessity for having an administrator appointed was to carry on the action pending at her death, which the decedent had brought against a railroad company to recover damages for personal injuries, it is apparent that, in determining as to the fitness of Esrey, the facts that the husband did not know him, that he was in reality selected by the representatives of the railroad company, whose interests were adverse to the decedent's estate, and particularly the fact that he had moved to California, were properly taken into account. These facts are more fully set forth in the opinion of the learned judge below. No case decides that it is the imperative duty of the register, or of the orphans' court on appeal, to put the administration of a deceased woman's estate in the hands of a nonresident, even though he be the nominee of her surviving husband. Certainly, the court committed no error in refusing to do so in the present case. There was an allusion by counsel, on the hearing in the orphans' court, to another paper which it was said relates to the appointment to be made in the event of Esrey not

qualifying; but this paper was not produced, and we will not surmise what its contents are. The case is to be determined here upon the record and the facts legitimately before the orphans' court, and, in view of all the circumstances to which we have alluded, we conclude that no inflexible rule of law required the court to sustain the appeal from the register's decision, to revoke the letters granted to McDonough, and to direct letters to be granted either to Gaines, or Esrey, his nominee.

The decree is affirmed at the costs of the appellant.